Smith, J.
If the return of the. sheriff should show that he detains Mr. Hatch by virtue of the warrant issued on the indictment, copies of both of -which are set out in the petition of the relator, we would feel constrained, in a proceeding of this kind, to refuse to order his discharge from the custody of the officer.
We are of the opinion that the court of common pleas, on the finding of such indictment, had jurisdiction to issue the warrant. And if this be so, it is conceded by the counsel for the relator, that under the provisions of sec. 5729, Rev. Stats, (and which is only a statutory enactment of the common law in this regard), the writ should not be allowed.
*164 It is urged in support of the application that the whole prosecution, and the proceedings under it, are absolutely void, for the reason that it is apparent from the face of the indictment, that no crime known to the law is charged against the defendant.
Conceding for the sake of the argument that this is so— then a demurrer to the indictment, by the express terms of the statute, will raise the question whether the. facts stated therein constitute an offense punishable by the laws of the state. And in contemplation of law, all rights of the defendant are thereby preserved; for the presumption is, that the court will properly decide this question, and if it does not, it can be reviewed in the usual and regular manner by proceedings in error. And the strong inclination and holding of the courts is, that “ where a tribunal is vested with jurisdiction over the subject-matter upon which it assumes to act, and regularly obtains jurisdiction of the person, it becomes its right and duty to determine every question which may arise in the cause, without interference from .any other tribunal. Hurd on Habeas Corpus, 332.
In this case, under our laws, the,court of common pleas undoubtedly had jurisdiction of the subject-matter of “ mis-conduct in office,” as it has of all other offenses, and an indictment was duly presented, charging the defendant with a violation of that law, and on this indictment he was properly b.efore the court, and thus the case would seem clearly to be brought within the letter and spirit of the rule above stated. And the fact that the indictment may not legally and formally, and in accordance with well established precedents, charge the defendant with the offense; will not in our opinion justify another court, even one having power to review and reverse the judgment of the court in which the cause is pending, in assuming to pass upon that question by means of the extraordinary remedy of habeas corpus; but will leave it to be decided by the one in which it is properly pending, until a decision is had in the trial court, and the matter is brought to the reviewing court on error. Hurd, 333-4.
Or, as settled by the decision of our supreme court in Reparte Bushnell, 8 Ohio St., 599, “ where a court of general jurisdiction, *165 and legally competent to determine its own jurisdiction, has acquired jurisdiction defacto, over person, or subject-matter, it is a rule founded upon comity between judicial tribunals, that no other,court will interfere with, or seek to arrest the action of the court, in which, and while the case is still pending and undetermined.”
In the case at bar, as we have before stated, the court of common pleas, in our opinion, had acquired, at least, de facto jurisdiction of the subject-matter of the prosecution for misconduct in office, and surely had over the person, and the case seems brought directly within the rule as laid down by our supreme court.
And it is certainly a reasonable and proper one — otherwise a judge of a probate court, who under our laws has jurisdiction in proceedings of this kind, with all the judges of all the other courts of the state, might assume to review and practically reverse on habeas corpus, 'the decision of any other court, superior to his in jurisdiction, or even if done by judges of equal or superior jurisdiction, great evils would be likely to result, and it should therefore be avoided.
But is it true, as claimed in argument, that this indictment does not profess to charge an offense punishable under the laws of the state? One strong argument of counsel for the relator in support of the proposition that it does not, is, that the section of the statute on which it is founded, sec. 6915, which provides, that “ whoever being a county commissioner, is guilty of any misconduct in office, shall be fined not more than $400, and forfeit his office,” does not of itself, define any offense, but simply says what shall be the punishment of such an officer, who is guilty of an infraction of the provisions of sec. 6909, 6910 or 6913, Rev. Stats., and does not provide for the punishmént of a commissioner for the violation of any other statute of the state, which points out his duties — the claim being as we understand it, that the only effect of sec. 6915 is to make the punishment of a county commissioner who violates any of the provisions of sec. 6909, 9910 or 6913, wholly different from that of any other officer named therein who violates said sections. And the argument for this view *166 is based mainly upon the fact, that these four sections are now found in the Crimes Act, (as brought into the revision of 1880), under the sub-heading of “ Misconduct of Officers.”
At first view there is some force m the claim ; but an examination of the legislation of the state goes far, we think, to remove the difficulty suggested.
Sec. 96 of the Crimes Act of June 1, 1831, was substantially re-enacted by sec. 6909; sec. 98 by secs. 6910 and 6913. See S. & C., Vol. 1, 428-9. These sections 96 and 98, making the acts therein specified criminal, (and as now contained in secs. 6909-10 and 6913), were in force'from 1839. On March 12, 1853, S. & C., 243, the law relating to county commissioners, and prescribing their duties, was passed, and this law contained as section 19, the provision as to the punishment of county commissioners, which was re-enacted by the revision of 1880, as sec. 6915. That is, 'the first 18 sections of that law point out the duties of the commissioners, and sec. 19 provides how any misconduct in office by them shall be punished.
Suppose the law now stood as it was contained in the Swan & Critchfield revision. Would it not be the correct interpretation of the statutes, that while sec. 96 and 98 of the Crimes Act, provided a punishment for the offenses therein mentioned, applicable to all the officers named in them, that sec. 19 was intended.to provide a punishment for any other wilful and corrupt violation on the part of county commissioners of any of the eighteen preceding sections, or of any other statute which pointed out and defined their duties? It seems so to us. And the fact that the commissioners to revise the statutes of 1880, have placed these sections under these new numbers closer together, or in a different relation to each other, is of no moment in continuing the law.
If, therefore, county commissioners find upon the statute book, a section which prohibits them as a board from allowing a bill for certain expenses of one of their number, unless it is properly certified as provided in the statute, and they violate it, wilfully and corruptly (for such we esteem to be essential to the commission of such an offense) we 'are of the opinion that they could be properly indicted and punished therefor under the terms of sec. 6915.
*167 It is urged, that it could not have been the purpose of the legislature to inflict so severe a penalty on county commissioners for failing to comply with the many (and, in some instances, apparently trivial) duties imposed upon them by law. But to this it may be answered, that it is to be presumed that the legislature had good reason for imposing these duties, and ail of them, upon these officers ; and it will not do to allow them, to be violated from an evil and corrupt motive with impunity. This is to place the officer above the law.
The only case in Ohio, that we know of under 'this law or that contained in S. & C., is that of The State v. Patton, which went to the supreme court from the court of common pleas of Hamilton county, on a ruling of the court as to the admission of evidence, and is reported in 9 Ohio St., 468.
The indictment in that case was drawn, and the prosecution conducted, by Judge Cox, then prosecuting attorney of the county. As appears from the report of the case, the indictment was one charging Patton, a county commissioner, with misconduct in office in this, that he combined with one Arnold to cheat the county, and made false and fraudulent representations to one of his colleagues, that it was necessary to erect a certain bridge, and induced him to enter into a contract with Arnold, by which the county was defrauded. Under this the defendant was convicted and removed from office; but the judgment was reversed on another point, no objection being made to the indictment. If that indictment was good, under sec. 19, there being no statute which specifically provided for such a case, it would seem that the same principle would be applicable to this.
But while we áre of the opinion that this statute has the scope we have stated, in view of the suggestions made to us in the argument of the case, we deem it proper to say, and to re-iterate our .opinion, that no prosecution for an offense under it can be maintained, unless there is clear proof of a wilful and corrupt violation of the statute. No mere mistake of law, or act done in ignorance of its provisions, will be sufficient. Nor in our judgment should anysuch prosecution be begun or carried on, without there is good reason to believe *168 that in doing what he did, a public officer was acting'to the known violation of the law, and from an evil and corrupt motive.
Messrs. Thomas MiUiken, Judge McKemy and Morey, Andrews & Morey,.for relator.
Mr. Shephard, prosecuting attorney, for the sheriff.